

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0490 | **DATE** | 5/12/03 |
| **CASE TITLE** | DIANE HOLMES v. AMERICAN DRUG STORES, INC., d/b/a OSCO DRUG, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #22)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum and order. For the attached reasons, defendant's Motion for Summary Judgment (doc. #22) is **GRANTED.** All other pending motions are terminated as moot.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 1 4 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE HOLMES,                                    )
                                                 )
            Plaintiff,                           )
                                                 )          No. 02 C 0490
      v.                                         )
                                                 )          The Honorable William J. Hibbler
AMERICAN DRUG STORES, INC., d/b/a                )
OSCO DRUG, INC.,                                 )
                                                 )
            Defendant.                           )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Diane Holmes filed this action against Defendant American Drug Stores, Inc.
d/b/a Osco Drug, Inc. (Osco), alleging that Osco discriminated against her because of her race
and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*
Osco now moves for summary judgment. For the following reasons, Osco's motion for summary
judgment is **GRANTED.**

### II. FACTS

Holmes is an African-American, female. Defendant Osco owns and operates a chain of
retail stores that sell medicines and miscellaneous items. Many Osco stores share retail space
with Jewel food stores, which are owned and operated by Jewel Food Stores, Inc.

On August 28, 2000, Holmes was hired into Osco's management trainee program at a
starting salary of $11.09 per hour. Holmes was assigned to an Osco store in Waukegan, Illinois
and was supervised by the store's manager, Dave Batjes. During the training period, which

1



typically lasts 20 weeks, supervisors provide trainees with written performance evaluations at the 30-day, 60-day, and 90-day marks. For these evaluations, the supervisor rates each trainee in fourteen distinct categories using one of four ratings: Exceeds Requirements, Meets Requirements, Does Not Meet Requirements, and Not Applicable. Additionally, the trainee's supervisor provides an "Overall Job Performance Rating" using one of five ratings: Outstanding, Exceeds Requirements, Meets Requirements, Does Not Meet Requirements, Too New To Rate. The evaluations also contain a space entitled "Job Performance Summary" where evaluators can elaborate on an employee's performance.

On her 30-day evaluation, Batjes rated Holmes as Meets Requirement in every category, Meets Requirements for her overall rating, and the comment section states:

> Diane is doing a fine job getting to know everyone in the store, how things work and is willing to do anything that is asked of her.

On her 60-day review, Batjes rated Holmes as Meets Requirements in five categories and Exceeds Requirements in nine categories, Exceeds Requirements for her overall rating, and the comment section states:

> Diane is doing a great job, takes on responsibility and control of any situation that is presented her. Since she has been here she has taken on an active role in the store more as an assistant then as a trainee. She works well with the crew when trying to work towards a common goal or task.

On her 90-day review, Batjes again rated Holmes as Meets Requirements in five categories and Exceeds Requirements in nine categories. Regarding the overall rating, however, the parties' stories diverge. Osco produces an evaluation that rated Holmes's overall job performance as both Meets Requirements and Exceeds Requirements and claims that Holmes was rated in this manner because her performance vacillated between the two categories.

2

Holmes submits a document that purports to be the same 90-day performance review, but rates her overall job performance as only Exceeds Requirements. Osco claims that Holmes altered the document and that their copy properly reflects the original evaluation's content. Holmes, on the other hand, claims that Osco altered the document to justify their decision not to promote her. Both documents contain the same comments however:

> Diane is beginning the last 2 weeks of her program and has come a long way she takes control of the situation and works well with the [illegible] crew store staff. Takes on responsibility and an active role when she is in charge of the crew at night when she is in charge. She is developing a style of her own.

On December 26, 2000, a few days after her 90-day review, Holmes got into an argument with the Jewel store director, Scott Cygan, over the price of certain merchandise. At the peak of the argument, Holmes exclaimed "fuck you!" to the store director and left the store. Although Holmes could have been fired for this incident, Batjes decided to issue Holmes a written warning.

On January 17, 2001, towards the end of Holmes's twenty-week training, Batjes met with Holmes and explained that the store had no assistant manager positions available and that only the very top trainees from her program would be promoted when a position opened. According to Osco, during the meeting Holmes said that she viewed her position as merely a job and not a career and that she was leaving as soon as she found a better opportunity.

Shortly thereafter, on February 19, 2001, Batjes met with his supervisor, Dave Pierini and the human resource manager, Tim O'Connor, to discuss employee performance at his store. According to Osco, Batjes reported that Holmes's job performance was only average and that she did not exhibit characteristics demonstrating her commitment to the company. Based on this recommendation, they decided not to promote Holmes to assistant manager.

On February 20, 2001, Batjes informed Holmes that she would not be promoted to

assistant manager and gave her a number of reasons for the decision including that she did not excel in her training, that other trainees performed better than her, and that she had been written up for the incident with the Jewel store director. Batjes offered her a supervisor position, which paid slightly less, approximately $10 per hour, than what she was making as a management trainee. Holmes refused the position and resigned that same day.

On March 8, 2001, Holmes called Tim O'Connor, one of Osco's human resource managers, to discuss Batjes's failure to promote her. On March 11, 2001, O'Connor informed Holmes that Batjes should not have removed her from the management trainee program and that she could return to work as a management trainee on March 19, 2001. Additionally, he told Holmes that she would receive three weeks pay to compensate her for the period of time after she resigned and her return date of March 19, 2001.

As agreed, Holmes returned to work as a management trainee eligible for promotion. On April 30, 2001, Holmes was scheduled to work at 2:00 p.m. but did not show. At 6:30 p.m., Holmes visited the store and told the operations manger that she was resigning because she had found another job and did not like the way Osco had treated her. Following her resignation, Holmes filed a Charge of Discrimination with the EEOC and on November 14, 2001, the EEOC issued a no-probable-cause finding and a right-to-sue letter prompting Holmes to file this lawsuit.

Holmes bases the present lawsuit on three primary allegations which she claim evidence Osco's discriminatory intent: (1) someone at Osco altered her 90-day performance review to justify their decision not to promote her; (2) she should have been promoted based on her job performance; and (3) that a less or similarly qualified white, male employee was promoted instead of her. Regarding the third allegation, Holmes offers a fellow employee, David Stivers, for comparison. Stivers participated in the same training program as Holmes and was also supervised

4

by Batjes. Stivers received an overall score of Exceeds Requirements on his 30-day review and Outstanding on his 60-day review. The record contains no information regarding his 90-day review.

In response, Osco contends that Holmes altered her own performance review and asks the court to sanction her for presenting fraudulent evidence. Also, Osco maintains that they had legitimate and nondiscriminatory reasons for not promoting Holmes. Specifically, Osco claims that other trainees, namely Stivers, simply performed better than Holmes and that Holmes's job performance was only average. Moreover, Osco explains that Holmes took herself out of consideration for a promotion when she voluntarily resigned to accept alternate employment. Osco contends that Holmes cannot demonstrate discrimination under any set of facts and they are therefore entitled to summary judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only where the dispute over the facts might affect the outcome of the lawsuit and there is sufficient evidence to support a jury verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When resolving a motion for summary judgement, the Court must consider the evidence in the light most favorable to the nonmoving party and resolves all inferences in the nonmoving party's favor. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 511 (7th Cir. 1996).

### IV. ANALYSIS

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of

5

employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §
2000e-2(a)(1). Holmes has not presented any evidence that would allow her to proceed under
the direct method of establishing gender or sex discrimination. Thus, to succeed in her Title VII
claim she must establish discrimination indirectly using the burden-shifting test set forth in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Holmes carries the burden of establishing a prima facie case of discrimination by
demonstrating (1) that she is a member of a protected group; (2) that she was qualified for the
position sought; (3) that she was rejected for the position; and (4) those that were promoted had
similar or lesser qualifications for the job, or in other words, they were not more qualified than
she. *Brill v. Lante Corporation*, 119 F.3d 1266, 1270 (7th Cir. 1997). If Holmes establishes a
prima facie case, Osco must articulate legitimate, non-discriminatory reasons for the adverse
employment decision. *Simpson v. Borg-Warner Automotive*, 196 F.3d 873, 876 (7th Cir. 1999). It is
then Holmes's burden to present evidence that Osco's proffered reasons were pretexual. *Id.* If
Holmes cannot establish a prima facie case of discrimination or if she fails to demonstrate pretext,
Holmes's Title VII case cannot succeed and Osco is entitled to summary judgement. *Haywood v.
Lucent Technologies*, 323 F.3d 524, 531 (7th Cir. 2003); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767,
772 (7th Cir. 2002).

A.      Prima Facie Case of Discrimination

      1.      Qualified for Promotion

Osco argues that Holmes cannot establish the test's second prong – that she was qualified
for the promotion to assistant manager. Osco claims that eligibility for promotion was
determined based on overall job performance and in relation to the performance of other
trainees. Since Holmes's performance was not the best, Osco contends that was not qualified for

6

a promotion. Osco's argument is unconvincing. As previously discussed, Holmes's three job performance evaluations demonstrate that she consistently received above average marks, including many instances where she exceeded Osco's requirements. Moreover, she received unequivocally positive comments on all three evacuations that included statements such as "Diane is doing a great job" (60-day) and "[s]he has come a long way" (90-day). An employee, such as Holmes, consistently exceeding her employer's requirements would certainly seem "qualified" for promotion. Osco's argument that Holmes's performance was inferior to other trainees does not render her "unqualified" for the promotion, rather it only establishes that more than one employee might have been eligible for promotion. Thus, because Holmes can present evidence that she was qualified for a promotion, Holmes can make a sufficient showing on this element of her claim.

> 2.    Adverse Employment Action

Holmes has greater difficulty establishing the test's second element – that she suffered an adverse employment action. Holmes identifies two possible adverse employment actions: 1) her temporary demotion and 2) Osco's failure to promote her to assistant manager. Regarding the first action, Osco contends that Holmes's temporary demotion did not constitute an adverse employment action because she was reinstated in the management training program within three weeks of her demotion and was awarded full back pay for the time she was improperly removed from the program. Regarding the second action, Osco explains that Holmes resigned from the management program and thus voluntarily took herself out of the running for promotion to assistant manager. Holmes does not directly (or for that matter, indirectly) respond to Osco's claims.

7

### a. Rescinded Demotion

A demotion can constitute an adverse employment action. *Crady v. Liberty Nat'l Bank &*
*Trust Co.*, 933 F.2d 132, 136 (7th Cir. 1993). But a lowering of an employee's status in and of
itself will not always result in an adverse employment action. Rather, the employee must also
demonstrate that "material harm" resulted from the challenged action. *Traylor v. Brown*, 295
F.3d 783, 788 (7th Cir. 2002). Recognizing this requirement, courts have found that a rescinded
employment action does not constitute an adverse employment action. *See Campbell v.*
*Henderson*, No. 00 C 6837, 2002 WL 173261, *7 (N.D. Ill. 2002); *see also Dobbs-Weinstein v.*
*Vanderbilt University*, 185 F.3d 542, 544 (6th Cir. 1999) (delayed promotion not adverse
employment action when action is rescinded and backpay is awarded); *Benningfield v. City of*
*Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (same).

Here, it is undisputed that on February 20, 2002, Osco demoted Holmes to a non-
management position that paid less money and offered fewer responsibilities. It is also undisputed
that Osco rescinded its decision three weeks later and reinstated Holmes into the management
training program where she was once again eligible for promotion. Moreover, Osco fully
compensated Holmes for the time she was improperly taken out of the program. Holmes has not
offered any evidence that she suffered material harm from the rescinded demotion. For example,
Holmes does not claim that the temporary demotion compromised her chance for future
promotion or somehow effected her seniority. Without evidence of this sort Holmes cannot
demonstrate that the demotion constituted an adverse employment action.

### b. Failure to Promote

A failure to promote can also constitute an adverse employment action. *Bell v. EPA*, 232

8

F.3d 546, 555 (7th Cir. 2000)(quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Osco claims that it did not fail to promote Holmes, rather Holmes quit before they had the opportunity to promote her. To support its contention, Osco explains that promotions to management positions may take up to forty-nine weeks and Holmes voluntarily resigned during her thirty-fifth week, thus taking herself out of the running for promotion. Osco's argument is without merit. It is undisputed that Osco's management training program typically lasts only twenty weeks. It is also undisputed that Batjes met with Holmes after she completed the twenty-week training and informed her that she would not be promoted. Furthermore, it is also undisputed that Osco promoted another member of Holmes's management trainee program, Stivers, after Holmes had completed her training. Thus, Osco's claim that they didn't have the opportunity to promote Holmes is untenable. Osco could have promoted Holmes to management after she completed her twenty-week training but decided against it. As Osco's decision denied Holmes a promotion, it constituted an adverse employment action.

      3.    Similarly Situated

Holmes has even greater difficulty establishing the test's final element – that those promoted had similar or lesser qualifications for the job. The only employee offered for comparison is a fellow trainee, David Stivers, who is a white, male hired after Holmes and promoted to assistant manager sometime before Holmes resigned. Holmes claims she was at least as qualified as Stivers and possibly more qualified. To support her position, Holmes explains that Stivers was hired into the management training program after Holmes and therefore did not benefit from as much training as she had. Holmes also claims that a complaint was made against Stivers for sexual harassment and that she did not have any similar complaints made against her.

9

In response, Osco maintains that Stivers is not a proper comparator because he performed far better than Holmes as evidenced by Stivers's two written evaluations. Osco further adds that Holmes had received a disciplinary write-up, whereas Stivers's record was clean. Lastly, Osco offers the testimony of Batjes, who supervised both Holmes and Stivers, that Stivers was a better employee than Holmes. Thus, according to Osco, Stivers was not "less or similarly" qualified than Holmes because he was much more qualified than she was.

To demonstrate that another employee is "similarly situated" a plaintiff must show that there is someone who is directly comparable to her in all material respects. *Patterson v. Avery Dennison Corporation*, 281 F.3d 676, 680 (7th Cir. 2002). The court must look to all relevant factors, the number of which depends on the context of the case. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Such factors include whether the employees "dealt with the same supervisor" and were "subject to the same standards." *Id.* at 617-618. It is also relevant whether the employees had comparable "experience, education and qualifications." *Id.* at 618.

Here, it is undisputed that Holmes and Stivers had the same supervisor, were both participating in the same management trainee program, and were subject to the same standards. One feature distinguishing Stivers from Holmes is that Holmes was disciplined for using profanity whereas Stivers's disciplinary record was clean.[1] This distinction is sufficient to render the employees not similarly situated. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618-19 (7th Cir. 2000). Additionally, the employees differ in that Stivers's performance reviews were consistently

---

[1]Holmes's allegations regarding the sexual harassment claim against Stivers are totally unsupported by evidence beyond reference to one of her previously filed motions, which apparently describes an incident that occurred *after* Stivers was promoted to assistant manager. Accordingly, the court will disregard Holmes's accusations of Stivers's alleged misconduct.

higher than Holmes's reviews. This distinction also renders them not similarly situated. *Porter v. Rohan*, No. 01 C 6992, 2003 WL 548396 at * 9 (N.D. Ill. 2003). Thus, because Holmes and Stivers vary in at least two material respects, Holmes cannot establish the test's third element.

B.   Legitimate, Non-Discriminatory Reasons

Even if Holmes met her initial burden of establishing a prima facie case of race or sex discrimination, Osco has set forth at least three legitimate, nondiscriminatory reasons for not promoting Holmes sooner. According to Batjes, Holmes was not promoted because (1) she did not "excel" during her training period, (2) other trainee's performances were better than hers, (3) she said "fuck you!" to the Jewel Store Director. It is well established that a desire to hire a better qualified applicant is a valid non-discriminatory reason on which to base a hiring decision. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002). Thus, as Osco has articulated legitimate, non-discriminatory for employment decision, Holmes must demonstrate that Osco's proffered reasons were pretexual. *Simpson*, 196 F.3d 873 at 876.

C.   Pretext

Holmes offers a number undeveloped arguments in support of her claim that Osco's asserted reasons for not promoting her were pretexual. First, Holmes contends that she did excel in her training but someone (she does not know who) altered her performance review to reflect an only average job performance. Holmes submits a review which she claims is the original, unaltered version. Holmes's submissions cannot create a dispute of material fact because, even to the naked eye, Holmes's copy clearly appears doctored. The performance reviews contain empty squares to the left of the typewritten performance designations. In these squares, the evaluators place check marks to indicate their choices. On Holmes's version, the square next to "Meets

11

Requirements" (which is empty) consists of dark, uneven and asymmetrical lines that do not match the lines of other squares on the page. It clearly appears as if the original box was whited-out and crudely redrawn to hide its true content. As no rational trier of fact could conclude otherwise, the court will disregard Holmes's accusations.

Holmes also refutes that other trainees, namely Stivers, performed better than her. Holmes does not believe that Stivers's accomplishments motivated Osco's decisions. Rather, according to Holmes, the only reason Osco promoted Stivers instead of her was because he was a white, male. Beyond these perfunctory appeals, Holmes offers nothing to support her suspicions. In her deposition, Holmes concedes that Stivers performed very well and should have been promoted. Moreover, the record confirms that Stivers received the highest and second highest possible rating on his two performance reviews. And perhaps most important, even if Holmes was as qualified as Stivers for promotion, the fact remains that Osco determined that she was not. This court must respect Osco's unfettered discretion to choose among qualified candidates. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1182 (7th Cir. 2002); *see also Steward v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("Courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions."). Holmes has not presented a shred of evidence that Osco did not honestly believe that Stivers was the best candidate for the promotion. Nor has she provided any evidence, beyond her incredulous testimony regarding the altered evaluation, that calls into question the veracity of Osco's reasons for failing to promote her.

Further, Holmes's own estimations regarding her suitability for promotion do not cast doubt on the legitimacy of Osco's proffered reasons for its employment decision. A plaintiff's contention that she is the better candidate for a vacancy constitutes nothing but the employee's

12

own opinion as to her qualifications. *Millbrook,* 280 F.3d 1169 at 1181. This cannot create an issue of material fact because "[a]n employee's perception of her own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." *Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 602 (7th Cir. 2001). Without evidence of a lie [as to what the employer believed] no inference of discriminatory motive can be drawn. *Id.* Holmes has not provided the court with any evidence that discrimination motivated Osco's promotion decision. She has therefore failed to demonstrate that Osco's reasons were pretexual.

## V. CONCLUSION

The court holds that Holmes cannot establish a prima facie case of discrimination against Osco. Furthermore, the court holds Osco has offered legitimate reasons for not promoting her and Holmes has not submitted evidence to establish that the reasons were pretexual. For the foregoing reasons, Osco's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

5/12/03

William J. Hibbler
United States District Court